IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA S. WHITAKER, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>  Defendant. ) | CIVIL ACT. NO. 2:12cv812-CSC<br>(WO) |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., alleging that she was unable to work because of a disability.  Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[2] the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A. Introduction.**  Pamela Whitaker was 47 years old on the date of alleged onset of disability and 50 years old at the time of the hearing before the ALJ.  (R. 35).  She has her general equivalency diploma (GED).  (R. 36).  Whitaker's prior work experience includes work as a tractor trailer driver, a security guard and a fast food cook.  (R. 37, 39).  Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of "hypertension, degenerative disc disease of the cervical and lumbar spine, impingement of the right shoulder, major depressive disorder, posttraumatic stress disorder, and alcohol abuse (20 CFR 404.1520(c)and 416.920(c))."  (R. 14).  However, the ALJ concluded that the plaintiff did not have impairments that met the criteria of any of the Listings of Impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ also concluded that the plaintiff was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework and relying on the testimony of a vocational expert, she concluded that there were a significant number of jobs in the national economy that the plaintiff could perform. (R. 22-24).  Thus, the ALJ concluded that Whitaker was not disabled because she had the residual functional capacity to perform light work with restrictions.  (R. 17, 24).

**B. The Plaintiff's Claims.**  Whitaker presents two issues for the Court's review.  As stated by Whitaker, the issues are as follows:

1. The Commissioner's decision erroneously relies upon an incomplete hypothetical question posed to the vocational expert, whose testimony

>    the ALJ utilized as support for the decision that Ms. Whitaker is not disabled.
>
> 2.  The Commissioner erred in finding that Ms. Whitaker can perform a range of light work, a finding which is not supported by linkage to either the medical opinion evidence or reasonable inferences drawn from the medical evidence as a whole.

(Doc. # 12, Pl's Br. at 2). It is to these issues that the court now turns.

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

>    *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**A.     The ALJ's hypothetical questions to the VE accounted for all of Whitaker's limitations.**   At step five of the sequential analysis, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. *Phillips*, 357 F.3d at 1239-40. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  However, a hypothetical question "may be adequate where it implicitly accounts for the claimant's limitations." *Beegle v. Soc. Sec. Admin., Com'r*, 482 Fed. Appx. 483, 487 (11th Cir. 2012) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  Moreover, "[a]n ALJ's errors in conducting the five step evaluation process may be harmless if they do not prejudice the claimant." *Jones v. Comm'r of Soc. Sec.,* 492 Fed. Appx. 70, 72 (11th Cir. 2012) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

During the administrative hearing, the ALJ posed the following hypothetical questions to the vocational expert.

> Q     I'd like to ask that you assume an individual with the same work history that you have already described for Ms. Whitaker. I'm going to ask further that you assume that I find that the individual is limited in the following fashion:  lifting and carrying no more than 20 pounds occasionally, 10 pound frequently; no overhead reaching with the right dominant arm;

> no climbing ladders, scaffolds, or ropes, or anything that would require her to lift her arms up over her head for that purpose; no work around unprotected heights or dangerous equipment; and no complex or detailed job instructions; no working in crowds, and only occasional contact with the public.  With these restrictions, in your opinion, could such an individual perform any of the work that Ms. Whitaker has performed in the past?
>
> A  No, ma'am.  Based on the hypothetical, I do believe the individual would be excluded from performing the past relevant work.
>
> Q  In you opinion, are there any jobs in the region or in the or in several regions in the country that an individual with the same work history is as Ms. Whitaker, and that is a younger individual with a - - I thought she had a GED - - yeah, with a highs (sic) school education be able to perform?
>
> A  Yes ma'am.  There would be positions that would be consistent with that particular hypothetical. . . .
>
> *      *      *
>
> Q  My second hypothetical is going to ask that you assume an individual with the same vocational profile as my previous hypothetical with the same restrictions, except for I'm going to change the lifting and carrying to no more than 10 pounds, and limit standing and walking to 30 minutes at a time, no more than two hours in an eight hour work day.  Otherwise, everything else is exactly the same.  So in other words, I guess what I'm asking you, Mr. Miller, is would you be able to identify sedentary jobs?
>
> A  It would be fairly limited with the ability to interrelate with the general public.  The only position that comes to mind is that of a surveillance monitor, which is DOT code 379.367-010.  That's sedentary and unskilled . . .
>
> *      *      *
>
> Q  And would you be able to [add] a few more, but it would be of limited range?

7

>    A    Yes, ma'am.  Yes, ma'am.

(R. 68-71)

The plaintiff complains that, in her hypothetical questions, the ALJ did not specifically state that she found Whitaker was moderately impaired "in maintaining social functioning, as well as her ability to respond appropriately to supervisors, coworkers, or work pressures." (Doc. # 12 at 3). She also complains that the ALJ did not include her moderate restriction in maintaining concentration or pace in her hypothetical questions to the vocational expert. (*Id.*)  In her opinion, the ALJ stated that Whitaker had moderate difficulties in her social functioning and with concentration, persistence or pace. (R. 16).  However, both the residual functional capacity determination by the ALJ (limiting Whitaker to light work with additional limitations) and the hypothetical questions posed to the vocational expert *do* implicitly account for moderate limitations in social functioning and concentration, persistence and pace.  Specifically, the ALJ restricted the plaintiff to "no complex or detailed job instructions; no working in crowds, and only occasional contact with the public." (R. 68). In addition, the vocational expert limited Whitaker to unskilled work. Because the ALJ's hypothetical questions to the vocational expert expressly limited Whitaker to work that did not involve complex or detailed instructions and expressly limited her contact with others, and because the vocational expert limited Whitaker to unskilled work, the ALJ implicitly accounted for moderate limitations in Whitaker's social functioning and concentration, persistence and pace.  *See  Beegle*, 482 Fed. Appx. at 487 (holding that a hypothetical

question may be adequate if it implicitly accounts for all the claimant's limitations (citing *Winschel*, 631 F.3d at 1180)). *See also Jacobs v. Comm'r of Soc. Sec.*, — Fed. Appx. —, 2013 WL 2436454 (11th Cir., June 6, 2013) (No. 12-15509) ("The ALJ's hypothetical questions to the vocational expert fully accounted for Jacobs's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment.")

Further, because the vocational expert testified that a significant number jobs requiring both light and sedentary work were available that could be performed by a person with Whitaker's residual functional capacity (R. 68-71), Whitaker cannot demonstrate that she was prejudiced by the lack of an express reference to a moderate limitations in social functioning and concentration, persistence and pace.  *See Beegle*, *supra*.

Therefore, the court finds no reversible error in the ALJ's failure to specifically mention Whitaker's moderate limitations.

**B.   The record supports the ALJ's Residual Functional Capacity ("RFC") Assessment**.  Whitaker also complains that the ALJ's RFC is not supported by substantial evidence because the ALJ's RFC determination "is not supported by linkage to either the medical opinion evidence or reasonable inferences drawn from the medical evidence as a whole." (Doc. # 12 at 7).  The ALJ concluded that the plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except the claimant can never reach overhead with the right non-dominant

>    arm; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous equipment; never have complex or detailed job instructions; and never work in crowds or have more than occasional contact with the general public.

(R. 17).

An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level.  If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.")  *See also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."). "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)." *Peeler v. Astrue,* 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010).

The plaintiff argues that "[t]here was no physical capacities assessment from either a treating source or even the consultative examiner," and consequently, there is no "linkage" between the medical evidence and the ALJ's residual functional capacity determination. (Doc. # 12 at 8).  Whitaker also complains that "[t]here is no evidence of record from a

treating or examining physician which supports the findings of the Commissioner with regard to [her] abilities to engage in work-related tasks." (*Id*. at 13).  In essence, the plaintiff contends that the record must contain a residual functional capacity determination by an examining or treating physician.  However, the plaintiff's argument conflates the nature of residual functional capacity with the responsibility for making the residual functional capacity determination.  The Commissioner's regulations clearly show who is responsible for making the residual functional capacity determination when a case has reached the administrative law judge hearing.

> If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.

20 CFR § 404.1546.

But that observation does not end the enquiry.  The essential question raised by the plaintiff is whether it is necessary to have a residual functional capacity assessment by a medical provider as part of the evidence which an ALJ must consider in reaching a determination.  In this case, the answer is no.  The ALJ stated that she

> considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929

and SSRs 96-4p[4] and 96-7p.[5]  I have also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.[6]

(R. at 18) (footnotes added).

The ALJ reviewed and considered all the medical evidence in the record in determining Whitaker's RFC.  The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions.  Consequently, the court concludes there was sufficient medical evidence before the ALJ from which she properly could made a residual functional capacity assessment.

Whitaker accuses the ALJ of substituting her judgment for that of a physician by assessing her physical abilities, and contends that the ALJ should have more fully developed the record by securing a mental RFC from a treating or examining mental health provider.  *See* Doc. # 12 at 12.  It is Whitaker's burden to establish the evidentiary basis from which her residual functional capacity may be determined.  In the fourth step of the sequential analysis, the ALJ determines the claimant's RFC and her ability to return to her past relevant work.  *Phillips*, 357 F.3d at 1238.  While the ALJ has the responsibility to make a

---

[4] This Ruling clarifies the policy of the Social Security Administration on the evaluation of symptoms in the adjudication of claims for disability benefits under title II and title XVI of the Social Security Act.

[5] This Ruling clarifies when the evaluation of symptoms, including pain, requires a finding about the credibility of an individual and explains the factors to be considered in assessing the credibility of the individual's statements about symptoms.

[6] Generally, these Rulings describe how the Commissioner evaluates and uses medical source opinions.

determination of plaintiff's RFC, it is plaintiff who bears the burden of proving her RFC, i.e., she must establish through evidence that her impairments result in functional limitations and that she was "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"). *See also Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001) (it is claimant's burden to prove RFC, and ALJ's responsibility to determine RFC based on medical records, observations of treating physicians and others, and claimant's description of limitations).

During the administrative hearing, Whitaker testified that she drives, shops, and cares for seventeen cats as well as several dogs. (R. 183, 185). Her hobbies include watching television, reading, drawing and painting - activities that require concentration and persistence. (R. 186). On her functional report, Whitaker indicated that she "pay[s] attention very well;" that she follows written instructions "well" and spoken instructions "pretty good;" and she handles change in routine "pretty good." (R. 187-88). Whitaker's own report of her restrictions in the areas of social functioning and concentration, persistence and pace supports the ALJ's residual functional capacity determination.

In support of her position, Whitaker relies on a case from this district for the proposition that the Commissioner's fifth-step burden must be supported by a residual functional capacity assessment of a physician. *See* Doc. 12 at 11 ("While the ALJ determines

Plaintiff's RFC, Plaintiff's limitations are considered medical opinions and, as such, must be evaluated by a physician." *Saunders v. Astrue*, 1:11cv308-WC, * 8 (M.D. Ala. Mar. 23, 2012).

*Saunders* is distinguishable from the case at bar. In *Saunders*, the court concluded that there was insufficient evidence in the record to reconcile the restrictions placed in the plaintiff by her physicians with the ALJ's residual functional capacity determination. Such an evidentiary gap does not exist in this case. The ALJ had before her sufficient medical evidence from which she could make a reasoned determination of Whitaker's residual functional capacity. Thus, she was not required to secure from a medical source a residual functional capacity assessment.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The ALJ evaluated all the evidence before her which led her to conclude that the plaintiff can perform light work. It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual

functional capacity is consistent with the medical evidence as a whole as well as Whitaker's testimony about her impairments and abilities. In short, after a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Whitaker's residual functional capacity to perform light work.

## V. Conclusion

For the foregoing reasons, the court concludes that the decision of the Commissioner is due to be affirmed. A separate final judgment will be entered.

Done this 1st day of October, 2013.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE